**ZIMMERMAN REED LLP**
Caleb L. Marker (CA Bar No. 269721)
Ryan J. Ellersick (CA Bar No. 357560)
6420 Wilshire Blvd., Suite 1080
Los Angeles, CA 90048
Tel: (877) 500-8780
caleb.marker@zimmreed.com
ryan.ellersick@zimmreed.com

**JANOVE PLLC**
Raphael Janove (CA Bar No. 361193)
500 7th Ave., 8th Fl.
New York, NY 10018
Tel: (646) 347-3940
raphael@janove.law

*Attorneys for Plaintiffs and the Proposed Classes*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| **Kelly Butler and Maria Alaimo,** on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>     v.<br><br>**Uplifting Results Labs, Inc.,**<br><br>        Defendant. | Case No.  8:25-cv-01396<br><br>**CLASS ACTION COMPLAINT**<br><br>1. Violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 et seq.<br>2. Violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 et seq.<br>3. Violation of the California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code. § 1750 et seq.<br>4. Violation of the New York General Business Law § 349.<br>5. 5. Violation of the New York General Business Law § 350.<br><br>**JURY TRIAL DEMANDED** |

The Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(d)(2) (*see* ¶¶ 10-11, *infra*.). It also has personal jurisdiction over Defendant because California is the jurisdiction where Defendant maintains its principal place of business and conducts substantial business and is where a substantial part of the acts and omissions that Plaintiffs complain of occurred.

Plaintiffs Kelly Butler and Maria Alaimo, on behalf of themselves and others similarly situated, on knowledge as to their own actions, the investigation of Plaintiffs' counsel, and otherwise upon information and belief, allege against Defendant Uplifting Results Labs, Inc. ("Defendant" or "Supergut") as follows:

## PRELIMINARY STATEMENT

1. This is a class action lawsuit against Supergut, which sells prebiotic powders, blends, and snack bars on its website, https://www.supergut.com. Specifically, Supergut sells a prebiotic powder called the "GLP-1 Booster," which Defendant falsely and misleadingly advertises as increasing GLP-1 levels and it being a "natural alternative" to, or providing the "same" health benefits as, medications such as Ozempic and Wegovy.

2. GLP-1 is a hormone naturally produced by the human body. It serves many functions, including slowing digestion, increasing the sensation of satiety after eating, telling the pancreas when to release insulin, and stopping glucose from entering the bloodstream.

3. Medicines such as Ozempic and Wegovy are GLP-1 agonists—synthetic versions of GLP-1. They are a medicine used to manage type-2 diabetes and are also extremely effective weight loss medications.

4. While naturally-occurring GLP-1 is quickly processed by enzymes in the body, giving it a half-life of only 1-2 minutes, GLP-1 agonists are designed to resist enzymes, giving them half-lives as long as 7 days.

5. This longer half-life is what makes GLP-1 agonists an extremely effective weight loss tool, giving users the benefits of the GLP-1 hormone—such as

1    slower digestion and feelings of satiety—for days rather than minutes.

2        6.    As a result, increasing naturally-produced GLP-1 by modest amounts

3    cannot create the same weight loss effects provided by long-lasting GLP-1 agonists such

4    as Ozempic and Wegovy.

5        7.    Despite this, Supergut falsely claims that their GLP-1 Booster can

6    naturally increase GLP-1 production to give users the same results as synthetic

7    medications such as Ozempic and Wegovy. This claim is false and misleading, as the

8    GLP-1 Booster is simply a powder blend made of banana, oat beta glucan, potato starch,

9    and vegetable fiber—ingredients not clinically proven to increase GLP-1 levels or

10   duration to that achieved by Ozempic and Wegovy.

11       8.    Defendant's false and misleading statements caused Plaintiffs and

12   members of the proposed classes to pay a price premium for the prebiotic fiber blend

13   advertised as GLP-1 Booster. Had they known the truth, Plaintiffs and members of the

14   proposed classes would not have purchased the prebiotic fiber blend or would have paid

15   significantly less.

16       9.    Plaintiffs seek monetary and injunctive relief against Defendant for

17   violating the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code

18   §§ 17200, *et seq.;* California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code

19   §§ 17500, *et seq.*; the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ.

20   Code §§ 1750, *et seq.*; and New York General Business Law ("GBL") §§ 349–50.

21                                **JURISDICTION**

22       10.   This Court has jurisdiction over this action under the Class Action

23   Fairness Act of 2005. Pursuant to 28 U.S.C. § 1332(d)(2), this Court has original

24   jurisdiction because the aggregate claims of the putative class members exceed $5

25   million, exclusive of interest and costs, and at least one of the members of the proposed

26   classes is a citizen of a different state than Defendant.

27       11.   This Court has personal jurisdiction over Defendant because

28   Defendant's principal place of business is in Culver City, California. Defendant conducts

1  substantial business in this District, and a substantial part of the acts and omissions that
2  Plaintiffs complain of occurred in this District.

3                                    **VENUE**

4          12.    Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because
5  a substantial part of the events or omissions giving rise to the claim occurred in this
6  District.

7          13.    In addition, venue is proper in this District under 28 U.S.C.
8  § 1391(b)(1) because Defendant resides in this District and is subject to this Court's
9  personal jurisdiction.

10                                  **PARTIES**

11         14.    Plaintiff Kelly Butler is an individual who resides in California and
12 purchased Defendant's GLP-1 Booster. Plaintiff reasonably relied on Defendant's false
13 advertisements and would not have purchased the item or would have paid less for the
14 item had she known about the deceptive advertising.

15         15.    Plaintiff Maria Alaimo is an individual who resides in New York and
16 purchased Defendant's GLP-1 Booster. Plaintiff reasonably relied on Defendant's false
17 advertisements and misleading information and would not have purchased the item or
18 would have paid less for the item had she known about Defendant's deceptive practices.

19         16.    Defendant Supergut is a Delaware corporation that is headquartered
20 in Culver City, California, and is responsible for the false advertising and misleading
21 statements that Plaintiffs reasonably relied on when they purchased their GLP-1 Booster.

22                                    **FACTS**

23         17.    Defendant markets and sells the GLP-1 Booster through its own
24 website and through third-party retailers including Target and Amazon.

25         18.    Defendant's advertising and marketing create a misleading and
26 intentionally deceptive narrative that their GLP-1 Booster can naturally increase users'
27 GLP-1 to levels that are comparable to GLP-1 agonist drugs such as Ozempic and
28 Wegovy.

CLASS ACTION COMPLAINT

19.    Defendant substantiates these claims by further misrepresenting results from clinical trials, making it appear like the GLP-1 Booster has been proven to increase GLP-1 levels. In reality, one trial showed how the GLP-1 Booster impacted glucose levels, not GLP-1, specifically. And another trial tested the impacts of Supergut's prebiotic shakes—not the GLP-1 Booster.

20.    Defendant's claims are intentionally false and misleading.

21.    To begin, by explicitly naming their product the GLP-1 Booster, Supergut's packaging clearly leads consumers to believe that this product will increase their GLP-1 levels.

22.    In reality, the GLP-1 Booster powder is simply a fiber blend made up of bananas, oats, potato starch, and vegetable fiber. This product cannot increase GLP-1 Levels because it does not include GLP-1 and it is not a synthetic GLP-1 agonist.

23.    The GLP-1 Booster packaging even claims that the product is "clinically proven," giving consumers the false impression that there is scientific evidence showing that this product increases GLP-1 levels:



24.    The GLP-1 Booster product page also has a section where they answer frequently asked questions. The website reads, "Has GLP-1 Booster been scientifically or clinically validated?" with their immediate answer being "Yes...."

**Has GLP-1 Booster been scientifically or clinically validated?**

Yes. In fact, all Supergut products have such a powerful ability to positively influence many aspects of health — including weight, blood sugar control, digestion and more — that we conducted a gold-standard, double-blind controlled clinical study to validate the health benefits of our patented resistant starch blend in our shakes (the same resistant starch fiber blend used in our fiber mix). You can read all about our science and clinical study here.

We've also tested GLP-1 Booster, and it shows impressive results to reduce post-meal glucose response and keep hunger at bay, even with higher-GI meals.

Science is paramount at Supergut and we're always vigorously validating our products for their health-promoting potential, and keeping up-to-date on any and all cutting-edge research.

25.    This is a misleading statement because it makes it seem like the GLP-1 Booster has been proven to increase GLP-1 and deliver the listed results, such as improving "weight, blood sugar control, digestion, and more."

26.    In reality, the clinical study that showed positive results in those areas only tested the results of Supergut Shakes, not the GLP-1 Booster.

27.    Supergut tries to ignore this distinction by saying that the starch blend tested in the shakes "is the same resistant starch fiber blend used in our fiber mix," indicating that the health benefits found in the study are applicable to all Supergut products.

28.    However, even if the study did apply to all products, the listed benefits do not include an increase in GLP-1. Thus, it is false advertising to claim that the GLP-1 Booster has been clinically validated.

CLASS ACTION COMPLAINT

29.     At most, Supergut has shown that their GLP-1 Booster may limit spikes in glucose levels:



30.     Even still, this does not measure or show an actual increase in users' GLP-1 levels.

31.     The GLP-1 Booster may have positive health benefits, but increasing GLP-1 levels is not proven to be one of them.

32.     Not only does Supergut mislead consumers on the content of the GLP-1 Booster, but they also deliberately misconstrue the efficacy of their product by explicitly comparing it to GLP-1 agonist drugs such as Ozempic and Wegovy.

33.    For instance, Supergut's website compares their products to Ozempic, blatantly stating that "Supergut Provides the Same Effect as Ozempic":



34.    Defendant also falsely claims that fiber—the backbone of Supergut's GLP-1 Booster—is a scientifically-proven natural substitute for Ozempic:

CLASS ACTION COMPLAINT



35.    Supergut also advertises that increased fiber can serve as a replacement for Ozempic by curbing hunger in the same way:

> Drugs like Ozempic® do a very good job of mimicking this hormone. But, what if you could curb your cravings without resorting to medication? Turns out, you can. And the key to unlocking natural GLP-1 production might just be hidden in the very *fibers* of the food we eat.

36.    Additionally, Supergut compares the GLP-1 Booster to Wegovy, falsely claiming that their products increase GLP-1 "just like Wegovy does":

Supergut
https://www.supergut.com › booster

**Gut Healthy GLP-1 Booster**
It works naturally with your body to stimulate GLP-1 production, just like Wegovy does! Even better?
Supergut can help ease some of the common side effects ...
$24.30 $27 · In stock · Free delivery over $60 · 30-day returns

37.    The GLP-1 Booster cannot deliver results similar to a GLP-1 agonist, as a GLP-1 agonist is a scientifically altered version of the GLP-1 hormone that cannot be replicated naturally.

38.    Moreover, the clinical study conducted and cited by Supergut concludes that a "fiber-enriched formula containing RS and OBG…may serve as a **complement to lifestyle and/or pharmaceutical interventions** for improving quality of life in people with T2D [type- 2 diabetes]" (emphasis added). The study reveals that Supergut products may benefit people with type-2 diabetes, but they can only be used to complement—not replace—medications such as Ozempic or Wegovy.

39.    This shows that Supergut products, including the GLP-1 Booster, are not as effective as Ozempic or Wegovy, nor can they deliver the same results as these GLP-1 agonist medications.

40.    When the GLP-1 Booster went to market, Supergut's CEO Tracey Warner Halama knew that the name of this product was false advertising and that Supergut did not have a study proving the product increased GLP-1 levels.

41.    In an interview with AgFunderNews.com, journalist Elaine Watson asked Halama "isn't it a bit risky to use the term 'GLP-1 booster' on pack given that the clinical study on Supergut products did not specifically mention GLP-1 levels…?"[1]

42.    Halama responded by admitting to false advertising, saying that "brands tend to be a little bit more aggressive with marketing frames as they're a little bit

_____

[1] https://agfundernews.com/supergut-raises-capital-hires-new-ceo-as-glp-1-nutrition-trend-takes-off-we-want-to-own-the-digestive-health-category

CLASS ACTION COMPLAINT

younger, and it may be that the FDA says to brands you can no longer have GLP-1 on front of pack….”[2]

43.    Halama then explicitly stated that Supergut “may do a follow up study in the realm of GLP-1,” indicating that no such study existed as of March 3, 2025, after the GLP-1 Booster had already gone to market.[3]

44.    GLP-1 Booster is marketed as increasing users’ naturally-produced GLP-1 hormone levels. However, Supergut has provided no evidence that it does that.

45.    Contrary to their upfront marketing, and only on pages buried in their website, Supergut briefly admits that increasing fiber intake is not as effective as Ozempic for weight loss:





In truth, no. Semaglutide drugs like Ozempic® and Wegovy® are *extremely* effective for weight loss. In clinical trials, most participants lose about 5% of their starting body weight, but some are even losing 10% and even 20% of their baseline weight. That’s a staggering statistic.

46.    However, the webpage then goes on to claim that increasing fiber

---

[2] https://agfundernews.com/supergut-raises-capital-hires-new-ceo-as-glp-1-nutrition-trend-takes-off-we-want-to-own-the-digestive-health-category

[3] https://agfundernews.com/supergut-raises-capital-hires-new-ceo-as-glp-1-nutrition-trend-takes-off-we-want-to-own-the-digestive-health-category

CLASS ACTION COMPLAINT

intake can create the same "biological processes" as Ozempic:

> Foods high in prebiotic fiber certainly cannot match such figures. But they can and *do* trigger the same fundamental biological process as Ozempic®.

47.    Once again, this is a misleading and false claim because Supergut does not act as a GLP-1 agonist nor has it been proven to naturally increase GLP-1.

48.    Finally, Defendant's false and misleading claims extend to its social media campaigns. Supergut pays for advertising on social media that actively targets consumers and falsely claims that the GLP-1 Booster naturally increases GLP-1 levels.

49.    One Instagram advertisement makes this exact claim:



CLASS ACTION COMPLAINT

50.     Other advertisements specifically highlight the GLP-1 Booster label, ensuring that consumers believe that Supergut's product "increases" GLP-1. These ads provide no disclaimer or footnote that the product does not contain GLP-1 or fails to act as a GLP-1 agonist:



51.   Supergut pays to push these messages out to consumers and social media users, meaning that they are actively trying to increase sales under the false pretense that their product increases GLP-1.

52.   Users of Supergut's GLP-1 Booster believe that they are paying a premium for a proven GLP-1 booster, similar to brand name products such as Ozempic and Wegovy. In reality, they are simply increasing their fiber intake.

53.   Based on this evidence, Defendant has violated California and New York law, which expressly prohibits false and deceptive marketing, advertising, and pricing schemes.

54.   The claims and issues asserted herein are governed by California state law. The State of California has the greatest interest in policing corporate conduct occurring within the State.

55.   Upon information and belief, the false advertisements and misleading statements emanated from the State of California, where Defendant is headquartered.

56.   Plaintiffs, on behalf of themselves and all others similarly situated, hereby seek restitution, injunctive relief, attorneys' fees, and all other relief which the Court may deem appropriate.

## CLASS ALLEGATIONS

57.   Plaintiff Butler and Plaintiff Alaimo bring this action pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (b)(3), on behalf of themselves and the following proposed "Nationwide Class":

> All persons in the United States who purchased the GLP-1 Booster within the relevant limitations period, and/or such subclasses as the Court may deem appropriate.

58.   Plaintiff Butler also brings this action on behalf of herself and on behalf of the following proposed "California Class":

> All persons in California who purchased the GLP-1 Booster within the relevant limitations period, and/or such subclasses

14

as the Court may deem appropriate.

59.     Plaintiff Alaimo brings this action on behalf of herself and on behalf of the following proposed "New York Class":

> All individuals in New York who purchased the GLP-1 Booster within the relevant limitations period, and/or such subclasses as the Court may deem appropriate.

60.     Excluded from the proposed Classes are Defendant and its employees, officers, directors, legal representatives, heirs, successors, subsidiaries, and affiliates, and the judicial officers and their immediate family members and associated court staff assigned to this case, as well as all persons who make a timely election to be excluded from the proposed class.

61.     Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence they would use to prove those elements in individual actions alleging the same claims.

62.     This action meets all applicable standards of Fed. R. Civ. P. 23 for class certification, in that Plaintiffs can demonstrate the elements delineated below.

63.     <u>Numerosity</u>. The members of the proposed Classes are so numerous and geographically dispersed that individual joinder of all proposed class members is impracticable. *See* Fed. R. Civ. P. 23(a)(1). While Plaintiffs believe that there are hundreds of thousands of members of the proposed Classes, the precise number of class members is unknown, but may be ascertained from Defendant's books and records.

64.     <u>Ascertainability</u>. The Classes are ascertainable because their members can be readily identified using business records, and other information kept by Defendant in the usual course of business and within its control or Plaintiffs and the class members themselves. Plaintiffs anticipate providing appropriate notice to the Classes to be approved by the Court after class certification, or pursuant to court order.

65.     <u>Commonality and Predominance.</u> This action involves common

questions of law and fact, which predominate over any questions affecting individual class members. *See* Fed. R. Civ. P. 23(a)(2) and (b)(3). These include, without limitation:

A.    Whether Defendant engaged in the conduct alleged in this Complaint;

B.    Whether Defendant violated the applicable statutes alleged herein;

C.    Whether Defendant's conduct emanated from the State of California;

D.    Whether Plaintiffs and the class members are injured and harmed directly by Defendant's conduct;

E.    Whether Plaintiffs and the class members are entitled to damages due to Defendant's conduct as alleged in this Complaint, and if so, in what amounts; and

F.    Whether Plaintiffs and the class members are entitled to equitable relief, including, but not limited to, restitution or injunctive relief as requested in this Complaint.

66.    Typicality. Plaintiffs' claims are typical of the putative class members' claims because, among other things, all such class members were comparably injured by Defendant's wrongful conduct as described above. *See* Fed. R. Civ. P. 23(a)(3). Defendant's creation and display of its misleading advertisements is uniform for all Plaintiffs and class members.

67.    Adequacy. Plaintiffs are adequate proposed class representatives because their interests do not conflict with the interests of the other members of the proposed Classes they seek to represent; because they have retained counsel competent and experienced in complex class action litigation; and because they intend to prosecute this action vigorously. The interests of the proposed Classes will be fairly and adequately protected by Plaintiffs and their counsel. *See* Fed. R. Civ. P. 23(a)(4).

68.    Declaratory and Injunctive Relief. Defendant has acted or refused to act on grounds generally applicable to Plaintiffs and the other members of the proposed Classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the proposed Classes as a whole. *See* Fed. R. Civ. P.

23(b)(2).

69.    Superiority. A class is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and putative class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for members of the proposed Classes to individually seek redress for Defendant's wrongful conduct.

70.    Applying the principles of equity or balance of equities, expecting an individual Plaintiff who is at a disadvantage with limited resources and spending capacity, and with minimal negotiating power, if any, to litigate claims against Defendant, a corporation that has significant resources and deep pockets, would be unfair. Class actions are a necessary and essential means to provide for public interest litigation with checks and balances to curtail deceptive practices by more powerful private corporations, including Defendant.

71.    There is no special interest in class members individually controlling the prosecution of separate actions. And even if class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and it increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. See Fed. R. Civ. P. 23(b)(3).

**CALIFORNIA LAW APPLIES TO THE ENTIRE NATIONWIDE CLASS**

72.    California's substantive laws apply to every class member, regardless of where in the United States the class member resides.

73.    Defendant's Terms of Service, of which Plaintiffs did not have reasonably conspicuous notice, require that disputes are governed by California law. Thus, regardless of whether the Terms are binding on Plaintiffs, Defendant has evidenced

a clear intent to subject itself to California law.

74.     California's substantive laws may be constitutionally applied to the claims of Plaintiffs and the Classes under the Due Process Clause, 14th Amend. §1, and the Full Faith and Credit Clause, Art. IV §1 of the U.S. Constitution. California has significant contacts, or a significant aggregation of contacts, to the claims asserted by Plaintiffs and all class members, thereby creating state interests that ensure that the choice of California state law is not arbitrary or unfair.

75.     Defendant's United States headquarters and principal place of business are located in California. On information and belief, Defendant also owns property and conducts substantial business in California. Therefore, California has an interest in regulating Defendant's conduct under its laws. Defendant's decision to reside in California and avail itself of California's laws, and to engage in the challenged conduct from and emanating out of California, renders the application of California law to the claims herein appropriate and constitutionally permissible.

76.     Upon information and belief, California is also the state from which Defendant's alleged misconduct and false statements emanated. This conduct similarly injured and affected Plaintiffs and all other class members.

77.     The application of California laws to the Classes is also appropriate under California's choice of law rules because California has significant contacts with Plaintiffs, and the claims of Plaintiffs and the proposed Classes. California also has a greater interest in applying its laws here than any other interested state.

**FIRST CLAIM FOR RELIEF**

**Violation of California's Unfair Competition Law ("UCL")**

**Cal. Business & Professional Code § 17200 et seq.**

**(On behalf of Plaintiffs, the Nationwide Class, and the California Class)**

78.     Plaintiffs incorporate by reference all allegations in this Complaint and restate them as if fully set forth herein.

79.     California Business & Professions Code, sections 17200, *et seq.* (the

"UCL") prohibits unfair competition and provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising."

80.    Defendant's false and misleading advertising claims regarding the GLP-1 Booster violate all three prongs—unlawful, unfair, and fraudulent—of the UCL.

81.    First, Defendant's representations and omissions regarding the GLP-1 Booster are unlawful because they are misleading to a reasonable consumer and violate the CLRA, FAL, and NY GBL, as alleged herein.

82.    Second, Defendant's conduct violates the "unfair" prong of the UCL because Defendant's representations and omissions regarding the GLP-1 Booster prebiotic powder are illegal, immoral, unscrupulous, and substantially injurious to consumers, and the negative impact on consumers outweighs any reasons, justifications, or motives for Defendant's conduct.

83.    Third, Defendant's conduct violates the "fraudulent" prong of the UCL because Defendant's representations and omissions are likely to deceive members of the public.

84.    Plaintiffs reasonably relied on Defendant's representations and omissions. The representations and omissions were material because a reasonable consumer would consider the efficacy of the GLP-1 Booster an important factor in deciding whether to purchase the products. The representations and omissions were a substantial factor in Plaintiffs' decision to purchase the products.

85.    As a direct and proximate result of Defendant's violations of the UCL, Plaintiffs, the Nationwide Class, and the California Class have suffered injury in fact and have lost money. Plaintiffs, the Nationwide Class, and the California Class paid an unwarranted premium for the probiotic powder and/or were denied the benefit of the bargain.

86.    Absent Defendant's misrepresentations and omissions, Plaintiffs would not have purchased the prebiotic powder or would have paid substantially less for

it.

87.    Plaintiffs seek relief for violations of the UCL in the form of restitution, and/or disgorgement of ill-gotten gains to compensate and make whole Plaintiffs and the Nationwide and California Classes. Restitution is appropriate because it is more certain, prompt, and efficient as compared to damages. Further, to obtain a full refund as damages, Plaintiffs would have to show that the products have no market value, whereas that showing is not required for restitution.

88.    Plaintiffs also seek injunctive relief in the form of an order enjoining Defendant from continuing to deceptively market the prebiotic powder. Injunctive relief is appropriate because Defendant continues to deceptively market the GLP-1 Booster as a dietary supplement that increases GLP-1 to levels comparable with Ozempic and Wegovy. Injunctive relief is necessary to prevent Defendant from continuing to engage in the unlawful conduct and to prevent future harm to Plaintiffs and the Nationwide and California classes which cannot be achieved through available legal remedies.

89.    **Permanent public injunctive relief.** Plaintiffs also seek public injunctive relief to protect the general public from Defendant's conduct.

90.    Defendant's false advertising is ongoing and will continue to harm the public absent a permanent public injunction. Accordingly, Plaintiffs seek a permanent injunction to enjoin Defendant from engaging in the misconduct alleged herein.

### SECOND CLAIM FOR RELIEF

### Violation of California's False Advertising Law ("FAL")

### Cal. Business & Professional Code § 17500 *et seq.*

### (On behalf of Plaintiffs, the Nationwide Class, and the California Class)

91.    Plaintiffs incorporate by reference all allegations in this Complaint and restate them as if fully set forth herein.

92.    The False Advertising Law, codified at Cal. Bus. & Prof. Code section 17500, *et seq.*, prohibits "unfair, deceptive, untrue or misleading advertising[.]"

93.    The FAL prohibits not only advertising which is false, but also

advertising which, although true, is either actually misleading or which has a capacity, likelihood, or tendency to deceive or confuse the public.

94.    Defendant violated section 17500 when it advertised and marketed the prebiotic powder mix through the unfair, deceptive, and misleading representations and omissions disseminated to the public that the prebiotic mix is a supplement that boosts GLP-1 and is capable of replicating the results of GLP-1 agonist medications such as Ozempic and Wegovy. In reality, the prebiotic mix simply increases the fiber intake of the user. Moreover, the prebiotic mix has not been clinically tested or verified for its ability to increase users' GLP-1 levels. The prebiotic mix does not and cannot deliver the advertised benefits.

95.    Plaintiffs reasonably relied on Defendant's representations and omissions. The representations and omissions were material because a reasonable consumer would consider the efficacy of the GLP-1 Booster an important factor in deciding whether to purchase the products. The representations and omissions were a substantial factor in Plaintiffs' decision to purchase the products.

96.    As a direct and proximate result of Defendant's violations of the FAL, Plaintiffs, the Nationwide Class, and the California Class have suffered injury in fact and have lost money. Plaintiffs and the Nationwide and California classes paid an unwarranted premium for the prebiotic mix and/or were denied the benefit of the bargain.

97.    Absent Defendant's misrepresentations and omissions, Plaintiffs would not have purchased the prebiotic mix or would have paid substantially less for them.

98.    Plaintiffs seek relief for violations of the FAL in the form of restitution, and/or disgorgement of ill-gotten gains to compensate and make whole Plaintiffs, the Nationwide Class, and the California Class. Restitution is appropriate because it is more certain, prompt, and efficient as compared to damages. Further, to obtain a full refund as damages, Plaintiffs would have to show that the products have no market value, whereas that showing is not required for restitution.

99.    Plaintiffs also seek injunctive relief in the form of an order enjoining Defendant from continuing to deceptively market the prebiotic fiber blend. Injunctive relief is appropriate because Defendant continues to deceptively market the GLP-1 Booster as a dietary supplement that increases GLP-1 to levels comparable with Ozempic and Wegovy. Injunctive relief is necessary to prevent Defendant from continuing to engage in the unlawful conduct and to prevent future harm to Plaintiffs, the Nationwide Class, and the California Class which cannot be achieved through available legal remedies.

100.    **Permanent public injunctive relief.** Plaintiffs also seek public injunctive relief to protect the general public from Defendant's conduct.

101.    Defendant's false advertising is ongoing and will continue to harm the public absent a permanent public injunction. Accordingly, Plaintiffs seek a permanent injunction to enjoin Defendant from engaging in the misconduct alleged herein.

### THIRD CLAIM FOR RELIEF

**Violation of the California Consumers Legal Remedies Act ("CLRA") Cal. Civ. Code. § 1750 *et seq.***

**(On behalf of Plaintiff Butler, the Nationwide Class, and the California Class)**

102.    Plaintiffs incorporate by reference all allegations in this Complaint and restate them as if fully set forth here.

103.    Plaintiffs and the other class members are consumers within the meaning of Cal. Civ. Code § 1761(d) and have engaged in a transaction within the meaning of Cal. Civ. Code §§ 1761(e) and 1770.

104.    Defendant is a "person" within the meaning of Cal. Civ. Code §§ 1761(c) and 1770 and sells "goods or services" within the meaning of Cal. Civ. Code §§ 1761(b) and 1770.

105.    Defendant and its GLP-1 Booster is a "good" or "service" within the meaning of Cal. Civ. Code. §§ 1761(a) and (b).

106.    Defendant has violated § 1770(a)(5) by representing that the GLP-1

Booster had characteristics they did not have.

107. Defendant has violated § 1770(a)(7) by misrepresenting that the GLP-1 Booster is of a particular standard, quality, or grade.

108. Defendant has violated § 1770(a)(9) by advertising the GLP-1 Booster with an intent not to sell it as advertised.

109. Defendant's acts, practices, and omissions, set forth above, led customers to falsely believe that the GLP-1 Booster is a dietary supplement that can increase users' GLP-1 to levels comparable with GLP-1 agonist medications such as Ozempic and Wegovy. In reality, the product does not and cannot deliver the advertised benefits.

110. Plaintiffs reasonably relied on Defendant's representations and omissions. The representations and omissions were material because a reasonable consumer would consider the efficacy of the GLP-1 Booster an important factor in deciding whether to purchase the product. The representations and omissions were a substantial factor in Plaintiffs' decision to purchase the product.

111. Defendant's violations of the CLRA directly and proximately caused injury in fact and damages to Plaintiffs, the Nationwide Class, and the California Class. Absent Defendant's misrepresentations and omissions, Plaintiffs would not have purchased the GLP-1 Booster or would have paid substantially less for it.

112. Plaintiffs seek relief for violations of the CLRA in the form of restitution, and/or disgorgement of ill-gotten gains to compensate and make whole Plaintiffs, the Nationwide Class, and the California Class. Restitution is appropriate because it is more certain, prompt, and efficient as compared to damages. Further, to obtain a full refund as damages, Plaintiffs would have to show that the products have no market value, whereas that showing is not required for restitution. Plaintiffs reserve the right to amend the Complaint to seek damages under the CLRA.

113. **Permanent public injunctive relief.** Plaintiffs also seek public injunctive relief to protect the general public from Defendant's conduct.

114.   Defendant's false advertising is ongoing and will continue to harm the public absent a permanent public injunction. Accordingly, Plaintiffs seek a permanent injunction to enjoin Defendant from engaging in the misconduct alleged herein.

## FOURTH CLAIM FOR RELIEF

### Violation of the New York General Business Law § 349

### (By Plaintiff Alaimo, individually and on behalf of the New York Class)

115.   Plaintiff Alaimo incorporates by reference all allegations in this Complaint and restate them as if fully set forth herein.

116.   In addition to claims under California law, Plaintiff Alaimo and the New York Class bring substantive claims under New York law.

117.   NY GBL § 349 declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state."

118.   NY GBL § 349 applies to Plaintiff Alaimo and the New York Class because the State of New York has a strong interest in protecting its residents from false advertising and deceptive business practices by companies marketing consumer goods within the state.

119.   Any person who has been injured by reason of any violation of NY GBL § 349 may bring an action in his or her own name to enjoin such unlawful acts or practices, an action to recover their actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not exceeding three times the actual damages, in addition to one thousand dollars per violation, if the court finds that the Defendant willfully or knowingly violated this section. The court may award reasonable attorneys' fees to a prevailing plaintiff.

120.   The practices employed by Defendant, by which it advertises and promotes the prebiotic fiber mix, are materially misleading and deceptive within the meaning of NY GBL § 349. Defendant markets the prebiotic fiber mix as a clinically proven way to naturally increase GLP-1 levels "just like Wegovy."

121.   Defendant's acts and practices deceived Alaimo and the New York Class. Plaintiff and the New York Class reasonably relied on these representations and believed they were purchasing a product that would "boost" their GLP-1 to provide "the same effect as Ozempic." In truth, Supergut GLP-1 Booster cannot provide the advertised benefits.

122.   Plaintiff Alaimo and the New York Class did not receive the benefit of their bargain. They paid a price premium for products falsely marketed as being a natural replacement to GLP-1 agonists medications such as Ozempic and Wegovy. The GLP-1 Booster is not capable of delivering on the promises Defendant makes.

123.   Defendant disseminated these false and misleading statements throughout New York, which were known, or should have been known through reasonable care, to be untrue and misleading to consumers, including Plaintiff Alaimo and the New York Class.

124.   Plaintiff Alaimo and the New York Class have been injured by Defendant's deceptive acts or practice, suffering an ascertainable loss by paying more for a product than they otherwise would have but for the false advertising.

125.   Plaintiff Alaimo and the New York Class have no adequate remedy at law.

126.   Defendant's conduct has caused and continues to cause immediate and irreparable injury to Plaintiff Alaimo and the New York Class and will continue to mislead consumers unless enjoined by this Court.

## FIFTH CLAIM FOR RELIEF

### Violation of the New York General Business Law § 350

### (By Plaintiff Alaimo, individually and on behalf of the New York Class)

127.   Plaintiff Alaimo incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein.

128.   In addition to claims under California law, Plaintiff Alaimo and the New York Class bring substantive claims under New York law.

129.   By reason of the acts set forth above, Defendant has been and is engaged in consumer-oriented advertising and marketing against Plaintiff Alaimo and class members located in New York, engaging in business conduct that is false and misleading in material respects, in violation of NY GBL § 350, which provides, in part, that "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

130.   Defendant caused statements that were untrue or misleading, and which they knew to be untrue or misleading, to be disseminated throughout New York State and elsewhere, through advertising, marketing, and other publications.

131.   Defendant's misrepresentations were material and substantially uniform in content, presentation, and impact upon consumers at large. Consumers were and continue to be exposed to Defendant's material misrepresentations.

132.   Plaintiff Alaimo and the New York Class have been injured by Defendant's deceptive acts or practices.

133.   Plaintiff Alaimo and the New York Class have no adequate remedy at law.

134.   Defendant's conduct has caused and is causing immediate and irreparable injury to Plaintiff Alaimo and the New York Class and will continue to damage both Plaintiff Alaimo and the New York Class and deceive the public unless enjoined by this Court.

135.   Pursuant to NY GBL § 350-e, Plaintiff Alaimo and the New York Class seek monetary damages (including actual damages or $500, whichever is greater, and minimum, punitive, or treble and/or statutory damages pursuant to NY GBL § 350-a(1)), injunctive relief, restitution, and disgorgement of all monies obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

136.   Defendant's conduct has also substantially injured the public, as consumers across New York were exposed to and relied upon Defendant's false advertising in deciding to purchase the prebiotic fiber mix. By marketing the prebiotic

fiber mix as increasing GLP-1 in similar ways to Ozempic and Wegovy, despite lacking clinical evidence, Defendant knowingly misled reasonable consumers into paying a premium for a product that cannot deliver the advertised benefits. The widespread deception not only caused financial harm to consumers but also promoted misleading narratives about natural supplements' ability to replace scientifically proven methods of increasing GLP-1—methods which are critical for managing weight loss and type-2 diabetes.

137.    Defendant's conduct thus caused real-world harm and poses an ongoing risk of further injury if not enjoined.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and the proposed Classes, pray for relief and judgment against Defendant as follows:

A.    Certifying the Classes pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiffs as representative of the Classes, and designating Plaintiffs' counsel as class counsel;

B.    Awarding Plaintiffs and the class members compensatory damages and actual damages in an amount exceeding $5,000,000, to be determined by proof;

C.    Awarding Plaintiffs and the class members appropriate relief, including actual and statutory damages;

D.    For declaratory and equitable relief, including restitution and disgorgement;

E.    For an order enjoining Defendant from continuing to engage in the wrongful acts and practices alleged here;

F.    Awarding Plaintiffs and the class members the costs of prosecuting this action, including expert witness fees;

G.    Awarding Plaintiffs and the class members reasonable attorneys' fees and costs as allowable by law;

H.    Awarding pre-judgment and post-judgment interest; and

I.      Granting any other relief as this Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury on all issues so triable.

Respectfully submitted,

ZIMMERMAN REED LLP

Dated: June 27, 2025          By:      /s/ Ryan J. Ellersick
Caleb Marker
Ryan J. Ellersick
6420 Wilshire Blvd., Suite 1080
Los Angeles, CA 90048
(877) 500-8780
caleb.marker@zimmreed.com
ryan.ellersick@zimmreed.com

JANOVE PLLC

Raphael Janove
500 7th Ave., 8th Fl.
New York, NY 10018
(646) 347-3940
raphael@janove.law

*Attorneys for Plaintiffs and the Proposed Classes*

CLASS ACTION COMPLAINT

I, Kelly Butler, declare:

1.  I am a Plaintiff in this action. If called upon to testify, I could and would competently testify to the matters contained herein based upon my personal knowledge.

2.  I submit this Declaration pursuant to California Code of Civil Procedure section 2015.5 and California Civil Code section 1780(d).

3.  I reside in Rancho Santa Margarita, California. As set forth in my complaint, I purchased Defendant Uplifting Results Labs, Inc.'s GLP-1 Booster.

4.  As set forth in the Complaint, Defendant is headquartered in Culver City, California. The Central District of California is the proper place for the trial of this action.

I declare under penalty of perjury under the laws of California that the foregoing is true and correct.

06/25/2025
_____
Date

_Kelly Butler_
Kelly Butler (Jun 25, 2025 13:34 PDT)
_____
Kelly Butler